

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. # 2009R.001912

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 18, 2010

**VIA ELECTRONIC FILING**
The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Joe D. Green
           Criminal Docket No. 09-840(JG)

Dear Judge Gleeson:

      The government respectfully submits this letter regarding the sentencing of defendant Joe D. Green scheduled for August 20, 2010. The government has received the defendant's sentencing memorandum and responds to some of the points raised therein. The defendant's main challenges are to a number of factual assertions stated in the Pre-Sentence Report ("PSR") that concern his participation in various aspects of the fraud scheme. In two post-arrest proffers with the government, the defendant admitted to each of the actual assertions as stated in the PSR that defendant now challenges. The government notes that during the proffers defendant was represented by a different attorney that his current counsel. Upon receipt of the defendant's sentencing memorandum this morning, the government supplied Mr. Grossman with the reports prepared by case agents for each of the proffer sessions. Mr. Grossman has informed me that he may submit an amended submission to the Court based on his review of the reports.

      The defendant also objects to sections of the PSR that advocate for a 2-point enhancement for obstruction of justice, under Federal Guidelines section 3C1.1, and an additional 2-point enhancement for defendant's fraudulent use of another individual's identification documents in furtherance of the crime, under Guidelines section 2B1.1(b)(10)(C)(i).

2

I.  The Underlying Facts For The
    Offense To Which Defendant Pleaded Guilty

As indicated in the PSR, the defendant was the organizer of a mortgage fraud scheme in which Fremont Investment and Loan ("Fremont") lost approximately $600,000 in loan funds. The defendant executed this crime by coordinating various friends, relatives and certain employees of a mortgage brokerage company to carry it out. As a first step in his plan, the defendant fraudulently obtained control of the title to a property located in Brooklyn, New York (the "Brooklyn Property"), by assisting in the filing of a fraudulent deed with the New York City Department of Finance indicating that the title had been conveyed to defendant's cousin for no consideration. While the defendant now denies his involvement in this portion of the scheme, he fully admitted to it in his proffers with the government conducted a few weeks after his arrest. During those meetings, the defendant described for the agents how he and the owner of the mortgage broker company prepared the false deed that they needed to initiate the scheme, which included forging various signatures and falsely using the name of his cousin as the new owner of the property.

The defendant next arranged for the sale of the Brooklyn Property to a straw buyer in order to obtain the $600,000 mortgage loan from Fremont. To do this, the defendant solicited his then-girlfriend, Oneika Carthon, to purchase the property for investment purposes. While defendant now denies that he assisted Carthon in filing fraudulent mortgage applications that grossly overstated her financial assets in order to obtain the loans, he admitted to agents during his proffers that he advised Carthon to sign blank forms so that the owner of the mortgage broker company could later fill in the information in such a way that would make it more likely she would get approved for the loan. In her plea allocation, Carthon stated that she was assisted by the defendant in preparing and filing the forms with Fremont.[1]

As his final step to obtain the proceeds from the mortgage loan, the defendant solicited other current and former girlfriends and family members to accept and negotiate checks

---

[1] Oneika Carthon pleaded guilty to Filing a Fraudulent Mortgage Application on February 19, 2010, pursuant to Title 18, U.S.C., § 1014 (10-CR-79 (ENV)). She is awaiting sentencing.

3

issued to them by Fremont at the closing. At defendant's instruction, once the checks cleared, they returned the resulting cash back to the defendant.[2] To carry this out, the defendant provided Fremont's attorney, another participant in this scheme, with the list of names he wanted the closing checks to be issued to.[3] Bank records for all these accounts indicate that within days of the deposits of the checks, the majority of the proceeds were withdrawn in cash. In some circumstances, checks were issued from those accounts to other entities controlled by the defendant.

II. The Court Should Apply the
    Sentencing Enhancements Proscribed in the PSR

The government agrees with the assessment of the Probation Department, as stated in the PSR, that the defendant should receive a 2-point enhancement for obstruction of justice pursuant to Guidelines section 3C1.1, in that he both suborned perjury, pursuant to Guidelines Commentary section 3C1.1(4)(b), and additionally provided materially false information to law enforcement agents, pursuant to Guidelines Commentary section 3C1.1(4)(g).

The first people the agents interviewed in this case were the account holders into which Fremont closing checks had been negotiated. Three out of the five account holders the agents interviewed stated that they had been instructed by the defendant to tell anyone who might later question them, especially if it were law enforcement, that they delivered the

---

[2] A check for $170,000 was issued from Fremont to Samantha Girard, a girlfriend of the defendant and New York City police officer. Bank records indicate that all but about $12,000 of this check was withdrawn from her account within days of its deposit. Girard initially lied to agents and falsely accused another individual, rather than the defendant, as the recipient of the proceeds from the check that she subsequently delivered. She later admitted that she provided all the cash directly to the defendant after the check cleared and that she had lied to protect the defendant. She pleaded guilty to Obstruction of Justice on February 19, 2010, pursuant to Title 18, U.S.C., § 1512(c)(2), and is scheduled to be sentenced on September 13, 2010.

4

proceeds from their respective check to the son-in-law of the actual owner of the Brooklyn Property, and further state that the defendant had no involvement. These witnesses additionally explained how the defendant had even given them the name of a specific bar, with the date and time when they purportedly delivered the cash to the son-in-law. In reality, based on the statements of these witnesses, they had never heard of or met the son-in-law. They also informed the agents that the defendant was the one who had both provided them with the checks and was the one to whom they later delivered the cash proceeds. Girard was the only check recipients who recounted the false story supplied by the defendant to the agents. Carthon refused to answer questions. In an excess of caution, the agents took the time to investigate the possible complicity of the son-in-law in the scheme and determined that defendant would have known his name from the neighborhood where the Brooklyn Property was located, but otherwise there was no apparent connection between him and the defendant based on telephone records, interviews and other information.

       In 2007, the defendant with his attorney present, agreed to be interviewed by the agents. In that interview, the defendant described in great detail his innocent involvement in the sale of the Brooklyn Property. He also stated that the son-in-law of the initial property owner was the driving force in the deal and how the check recipients, even though their relationships had been with the defendant, informed the defendant that they had negotiated their checks and delivered the cash to the son-in-law.

       The Probation Department also proscribes that the Court refuse to credit the defendant with a 3-point reduction for his acceptance of responsibility under Guidelines section 3E1.1, as stated in paragraph 15 of the PSR. While the defendant is correct that his denials to the agents regarding his involvement in the mortgage fraud scheme took place in 2007, prior to his arrest, he continued to claim in his post-arrest proffer statements that the son-in-law of the true owner of the Brooklyn Property was also involved in the fraud. The defendant also continues to insist that the son-in-law was the one to whom Girard delivered cash, even though Girard herself has pleaded guilty to obstruction of justice and provided a sworn statement during her allocution to that charge that the son-in-law had no involvement in the fraud scheme to her knowledge. So while the defendant now admits his participation in the scheme, he

5

continued to accuse the son-in-law of being a co-conspirator even though every other participant in the scheme that defendant claimed dealt with this individual in carrying it out, denies any knowledge or involvement of the son-in-law.

## Conclusion

The situation regarding the defendant's autistic son is certainly something the Court should consider in arriving at a reasonable and just balancing of the factors set forth in 18 U.S.C. § 3553(a). There is no doubt that the defendant's presence and support for that child as he grows up is important. That having been said, the mortgage scheme defendant engaged in and pleaded guilty to created a real hardship for the family of the true owner of the Brooklyn Property. They are still trying to untangle the clouded legal title to that property and the fact that the owner's son-in-law was falsely accused during the investigation that the defendant created. Additionally, the defendant used his relationships with women he had to further his scheme, many of whom now have ruined credit and one of whom has lost her career as a police officer and will soon being a convicted felon because of her misguided protection of him. The defendant also has a fairly extensive criminal history, including two new felony convictions involving thefts that were committed after his participation in this mortgage scheme.

Very truly yours,

LORETTA E. LYNCH
United States Attorney

By:    /s/
Daniel D. Brownell
Assistant U. S. Attorneys